UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-551-H

VICTORIA ROACH                                                                PLAINTIFF

V.

LOUISVILLE METRO GOVERNMENT, et al.                               DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Victoria Roach ("Roach") is a biological female who was undergoing

testosterone therapy at all times relevant to this dispute in an effort to develop the secondary sex

characteristics of a man.  She was arrested on June 12, 2004 for knowingly receiving stolen

property.  She spent two days in jail during which time the corrections officers placed her in

isolation in the male section of the jail, allegedly causing her to suffer mental and emotional

abuse.  She has filed suit pursuant to 42 U.S.C. § 1983 against the Louisville Metro Government,

the Louisville Metro Police Department, the Louisville Metro Corrections Department and

Officer Bruce Goodfleisch ("Officer Goodfleisch"), alleging various constitutional violations.

Discovery is now complete.  Plaintiff and the Metro Government Defendants have moved for

summary judgment.

I.

On Saturday June 12, 2004, Roach was driving a 1988 Chevrolet Blazer on Dixie

Highway.  Officer Goodfleisch was on patrol in the neighborhood at that time and was running

license plates on his computer data terminal to track down stolen vehicles and to investigate

other criminal conduct.  At about 4:00 p.m., he saw Roach driving the Blazer.  He entered her

license plate number and he discovered that the Blazer had been reported stolen.  After entering

the license into the computer system again and calling dispatch to verify the report, he confirmed

that the Blazer had actually been reported stolen.

Officer Goodfleisch stopped Roach's vehicle and told her to get out of the car.  He told

her that he had pulled her over because the Blazer had been reported stolen.  He ordered her to

go to the back of the Blazer.  He then had her place her hands on the back of the truck and

conducted a pat-down search of her person.  At the scene, Roach repeatedly told Officer

Goodfleisch that she was the rightful owner of the car.  She told him that she had recently

purchased it from Pedigreed Auto Sales, LLC ("Pedigreed Auto").  She showed him a receipt

that indicated that she had purchased the car from Pedigreed Auto on June

5, 2004.  But when asked, she admitted that she did not have proof of title or proof of registration

for the Blazer.  Therefore, Officer Goodfleisch placed her under arrest for receiving stolen

property and escorted her to the Metro Department of Corrections.

When Roach arrived at the Department of Corrections, there was some confusion as to

how to classify her and where to place her.  For a considerable period of time prior to her arrest,

she had been taking testosterone injections in an effort to transform her appearance to that of a

man.  The injections had caused Roach to develop certain secondary sex characteristics that are

particular to males.  For example, at the time she was arrested, she had developed facial hair and

broad shoulders.  She testified that the reason she was taking testosterone was that she

throughout her entire life she felt that she should have been born as a man.

Because of Roach's altered appearance, corrections officers responsible for intake

2

initially were unsure of Roach's biological gender.  They asked her whether she was male or

female.  Roach retorted that she was "both" because she was offended by the question and then

she quickly corrected herself by reporting that she was female.  To be sure, corrections officers

called a nurse to inspect her and of course, the nurse concluded that Roach was female.  After

determining her biological sex, corrections officers asked Roach whether she preferred to be

detained with the male inmates or the female inmates.  Because Roach did not feel comfortable

with either the male or the female inmates, she said that she would prefer to sit in isolation.

Accordingly, the officers jailed her in an isolated cell in the booking area.

A short time later, Roach complained that her cell was too cold and the officers

transferred her to an isolated cell on the same hallway as the male inmates' cells.  That cell had a

toilet, a sink and a bed.  It remained locked throughout Roach's stay unless a corrections officer

had specific cause to open it.  The cell had solid walls on three sides.  On the fourth side of the

cell, there was a transparent plastic surface that extended from waist-level to the ceiling and a

solid wall that extended from the transparent surface to the floor.

Roach alleges that while she was housed in that cell, male inmates repeatedly passed by

the outside of her cell and looked in at her.  These inmates taunted her and made lewd gestures.

She testified that one male inmate stood outside of her cell, stared at her and then asked her to

take her clothes off.  She admits that she struggled to hear what the inmate said because sound

barely traveled through the plastic surface.  During this time, Roach refused to use the restroom

because she felt too afraid of being seen.  Accordingly, she also refused to eat.

Roach was released from custody on Monday June 14, 2004 after two days of

incarceration.  A short time later, she represented herself on the criminal charges and the case

was dismissed.  This lawsuit followed.

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the

moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is genuine when "the evidence is such that a

reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).

To prevail on her § 1983 claims, Roach "must establish that a person acting under color

of state law deprived [her] of a right secured by the Constitution or laws of the United States."

*Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir.2001).  Roach alleges that the

Louisville Metro Government, the Louisville Metro Police Department, the Louisville Metro

Department of Corrections and Officer Goodfleisch, all persons acting under color of state law,

violated her First, Fourth, Fifth, Eighth and Fourteenth Amendment rights under the United

States Constitution.

## III.

Roach claims that Officer Goodfleisch violated her constitutional rights when he arrested

her for possession of stolen property.  The Fourth Amendment, which is made applicable to the

states by its incorporation into the Fourteenth Amendment, mandates that "a law enforcement

officer may not seize an individual except after establishing probable cause that the individual

has committed, or is about to commit, a crime." *Williams v. Cambridge Bd. of Educ.*, 370 F.3d

630, 636 (6th Cir. 2004).  Probable cause necessary to justify an arrest is defined as "whether at

that moment the facts and circumstances within [the officers'] knowledge and of which they had

reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Under Ky. Rev. Stat. § 514.110, a person commits a criminal offense if "he receives, retains, or disposes of movable property of another knowing that it has been stolen, or having reason to believe that it has been stolen . . .." In this case, Roach was driving an automobile that had been reported stolen. She had no record of title and no registration papers at the scene of the arrest. The only record of rightful ownership that she did have in her possession was a receipt from Pedigreed Auto.

Roach argues that because the officer failed to contact Pedigreed Auto Sales, he failed to perform a reasonable investigation, and therefore he could not have had probable cause to arrest her. If he had contacted Pedigreed Auto, Roach submits, he would have learned that the Blazer had not actually been stolen; rather, it had been rightfully repossessed. In *Gardenhire v. Schubert*, the Sixth Circuit stated that "[an] officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire*, 205 F.3d at 318 (emphasis in original). In that case, as in *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir.1999), the Sixth Circuit held that police officers did not have probable cause to arrest where they did not take into account known exculpatory evidence in their assessment of probable cause. But once a police officer has sufficient probable cause to arrest, he need not investigate further. *Coogan v. City of Wixom*, 820 F.2d 170, 173 (6th Cir.1987) (internal quotation omitted).

Here, Officer Goodfleisch had probable cause to arrest Roach for receiving stolen property despite his failure to contact Pedigreed Auto. It is true that Roach's receipt suggested

5

that she was the rightful owner of the Blazer.  But because Roach had no title and no registration, the officer had a reasonable basis to doubt its authenticity.  Moreover, under Kentucky law, the possession of stolen property alone is prima facie evidence of the requisite mens rea.  Ky. Rev. Stat. § 514.110 ("The possession by any person of any recently stolen movable property shall be prima facie evidence that such person knew such property was stolen.").  Finally, this is not a case in which the officer failed to take known exculpatory evidence into account.  If Roach had not shown the receipt to the officer, she likely would have been arrested for grand theft auto. Nevertheless, because Goodfleisch had probable cause based on the evidence at the scene, he had no constitutional duty to conduct further investigation before effectuating the arrest. Therefore, Defendants are entitled to summary judgment on Roach's Fourth Amendment claim.

IV.

Roach also claims that once she was arrested, the conditions of her confinement violated her constitutional rights to due process and her right to be free from cruel and unusual punishment.  Specifically, Roach argues that her placement into an isolated cell in the male section of the jail violated her due process rights.  In that regard, she is making a condition of confinement claim.  A condition of confinement case is a constitutional attack on general conditions, practices, rules or restrictions of pretrial confinement which are analyzed under the Fourteenth Amendment's guarantee of due process of law, as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which only applies to sentenced inmates.  *Bell v. Wolfish*, 441 U.S. 520, 535, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979).

The Due Process Clause prohibits punishment of pretrial detainees and protects them

from excessive force that amounts to punishment. *See Wolfish*, 441 U.S. at 535-39; *see, e.g.*, *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004) (due process violated by locking pretrial detainee in closet-sized confinement cell for more than 500 days). To determine whether a particular restriction imposed on a pretrial detainee comports with due process, a court must determine whether the restriction is for the purpose of punishment or is otherwise reasonably related to a legitimate and non-punitive governmental purpose. *See Wolfish*, 441 U.S. at 538-39.

In this case, Roach's placement in an isolated cell in the male section of the jail was reasonably related to a legitimate and non-punitive governmental purpose. The evidence establishes that the corrections officers placed Roach in her isolated cell because of legitimate concerns for her safety. At the time of her incarceration, Roach's appearance made her vulnerable to abuse from both male and female inmates. As a woman, she had breasts, female genitalia and she lacked a defined Adam's apple. But because of the testosterone injections, she had facial hair and broad shoulders. Accordingly, detaining her in a cell with the general population of either male or female inmates may have lead to even greater abuse than what she suffered in her isolated cell. Even she testified that she felt uncomfortable around men and women. Based on their shared concerns, the corrections officers initially detained her in an isolated cell in the booking area of the jail. It was only after she complained that she was cold that they transferred her to a different isolated cell in the male section of the jail. Therefore, the Court concludes that the corrections officers did not detain Roach with the male inmates in order to punish her.

In a related claim, Roach argues that the corrections officers failed to protect her from the male inmates' harassment and intimidation in violation of her due process rights. Prison

officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Nevertheless, not every injury a prisoner suffers at the hands of another prisoner is actionable. *See id.* at 834. In a failure to protect case, prison officials violate the constitutional conditions of confinement only where two requirements are met. *Id.* The plaintiff must first show that the conditions of incarceration pose a substantial risk of serious harm. *Id.* (internal quotation marks omitted). Second, the plaintiff must show that the defendant have a "sufficiently culpable state of mind." *Id.* The culpable state of mind required is that of "deliberate indifference" to an inmate's health or safety. *Id.*

The conditions of Roach's confinement did not pose a substantial risk of serious harm. Roach claims that because the corrections officers housed her in the male section of the jail, they subjected her to a substantial risk of mental and physical abuse by other detainees. *See, e.g.*, *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995) (deliberate indifference claim stated by allegations that officials knew of "imminent potential" of physical harm to detainee from his mentally ill cellmate); *Redman v. County of San Diego*, 942 F.2d 1435, 1445 (9th Cir. 1991) (en banc) (deliberate indifference when officials suspected possible attack on detainee with "young and tender" profile by aggressive homosexual cellmate). However, because Roach was confined in an isolated cell, she had no physical contact with other inmates unless they were accompanied by a corrections officer. Therefore, there was little if any risk of harmful physical abuse.

There is evidence that Roach suffered mental abuse when male inmates passed by her cell, ridiculed and harassed her. Roach alleges that she did not use the restroom on a single occasion for her two-day incarceration because she feared ridicule and abuse from the other inmates. However, the mental abuse that she regrettably suffered does not establish that the her

confinement created a substantial risk of serious harm. On the contrary, her cell was equipped to protect her from other inmates and to prevent any harm they might cause her. The cell was kept locked day and night. It was only visible through a single wall, the top half of which was made of a transparent plastic surface. Although the inmates could see her through the transparent surface and often made lewd gestures, their voices were barely audible to her and Roach admits that she had to read their lips to understand what they said. Roach had her own toilet and her own sink and her meals were delivered to her cell. The only time she came into physical contact with other inmates was when they delivered the meals and those inmates were accompanied by a corrections officer in accordance with internal policy.

At the same time, there is no evidence that the corrections officers responsible for Roach acted with deliberate indifference. A prison official may be liable under the Due Process Clause for acting with deliberate indifference to inmate health or safety only if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. This deliberate indifference standard is therefore a subjective one. *Id.* at 837-40. In this case, as indicated above, the sporadic presence of male inmates outside of her locked cell does not create an obvious risk of substantial harm. Accordingly, Defendants are entitled to summary judgment on Roach's due process claims.

V.

Roach also alleges that the Louisville Metro officials retaliated against her for exercising her rights to free speech. In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc), the Sixth Circuit held that an inmate claiming retaliation for the exercise of First Amendment

9

rights must show: (1) that he or she engaged in protected conduct; (2) that an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that there is a causal connection between the adverse action and the protected conduct. In this case, Roach alleges that the corrections officers placed her in isolation because she spoke out against the constitutionality of her arrest. More specifically, she alleges that she made repeated verbal complaints to the corrections officers, claiming that she had been arrested without sufficient cause; and therefore, they placed her in an isolated cell in the male section of the jail.

The Court has grave doubts as to whether a detainee's informal verbal complaint to a corrections officer regarding the lawfulness of her arrest constitutes protected conduct. If this were the law, the courts would be flooded with First Amendment claims filed by every criminal defendant who complained that he was factually innocent while he was being detained. Nevertheless, the Court need not resolve this question because there is no evidence that she actually made informal complaints to corrections officers. The Court has scrutinized the deposition testimony and the exhibits in the record and there is no evidence whatsoever that Roach made any complaint regarding the lawfulness of her arrest while in the custody of the Department of Corrections. Although there is evidence that she complained to Goodfleisch, the arresting officer, before she was detained, that evidence is not relevant to her First Amendment claim because there is no causal connection between those comments and the corrections officers' decision to place her in isolation. *See Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).

In the alternative, Roach argues that the corrections officers retaliated against her for

exercising her freedom of association.  This claim has no legal merit.  When Roach first arrived

at the jail, the corrections officers asked her whether she would rather be detained with the male

or the female inmates.  She stated that she would prefer to be in a single cell in the booking area

because she did not feel comfortable with men or women and that is exactly where the officers

placed her.  It was only after she complained that her cell was too cold that the officers moved

her to a single cell in the male hallway.  Therefore, Defendants are entitled to summary judgment

on Roach's First Amendment claims as well.

## VI.

Roach has also asserted a Fifth Amendment claim against the Louisville Metro

Government and its officials.  However, the Fifth Amendment Due Process Clause

"circumscribes only the actions of the federal government."  *Scott v. Clay County*, 205 F.3d 867,

873 n. 8 (6th Cir. 2000).  The only allegations here involve state actors; and accordingly that

claim must be dismissed.

## VII.

The Louisville Metro Government, the Louisville Metro Police Department and Officer

Goodfleisch have also moved for summary judgment on Pedigreed Auto's cross-claim against

them.  In that claim, Pedigreed Auto alleges that the Louisville Metro officials "negligently and

recklessly" listed Roach's automobile as stolen.  There is absolutely no evidence in the record

from which a rational juror could find that the city was or reckless.  In fact, there is no evidence

as to why the car was listed as stolen or what procedures were used at all.[1]

---

[1] The attorneys have suggested in their briefs that an individual named Dauntye Walker ("Walker") reported the Blazer stolen on May 11, 2004 after it had been rightfully repossessed from him.  But no witness with personal knowledge of that information has so testified or filed an affidavit.  Although the Louisville Metro Government intended to submit the police report which allegedly stated that the Blazer had been reported stolen by

11

Moreover, even if there were evidence of negligence or recklessness on the part of the named Louisville Metro Government agencies and officials, they are immune from suit in this Court for their allegedly negligent conduct. See Ky. Rev. Stat. § 44.072 ("The Board of Claims shall have exclusive jurisdiction to hear claims for damages, except as otherwise specifically set forth by statute, against the Commonwealth, its cabinets, departments, bureaus, agencies or any of its officers, agents or employees while acting within the scope of their employment . . .."). Under the Kentucky sovereign immunity doctrine, a state official may be sued for monetary damages based on his negligent exercise of ministerial duties if he is sued in his personal capacity. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). However, the official who logged the stolen car report in this case has not been sued. Consequently, Defendants are entitled to summary judgment on Pedigreed Auto's cross-claim.

VIII.

The only remaining claims are Roach's claims against Pedigreed Auto. The Complaint asserts that "In failing to properly register and sell Plaintiff's truck and causing Plaintiff to be arrested, incarcerated and exposed to legal process, the Defendants, and each of them, knew or should have known they were violating those constitutional rights set forth above." That claim appears to assert that Pedigreed Auto, a private company, violated Roach's constitutional rights. To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must properly allege two elements: (1) the defendant was acting under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured under federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998). Pedigreed Auto has not filed a motion for summary judgment on the claim.

---

Walker, that report was never submitted as an exhibit.

However, the Court has the discretion to grant summary judgment sua sponte. *See Brown v. Raymond Corp.*, 432 F.3d 640, 649 (6th Cir. 2005) ("A district court does not abuse its discretion in granting summary judgment sua sponte when the party adversely affected is put on notice to produce evidence establishing that a genuine issue of material fact exists.").

Here there is no evidence to suggest that Pedigreed Auto was acting under color of state law. Moreover, the Court cannot conceive how a private auto company could be shown to be acting in the capacity of the state in these circumstances. Both Plaintiff and Pedigreed share the blame for Plaintiff's failure to obtain a proper registration. Also, neither could have conceived that Plaintiff would later be stopped and arrested. The case against Pedigreed is entirely insubstantial from a factual and legal basis and, therefore, should be dismissed.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record